IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION

No. 2:25-CV-27-RJ

| | |
|---|---|
| LISA LYNN FLETCHER,<br><br>Plaintiff/Claimant,<br><br>v.<br><br>FRANK J. BISIGNANO,<br>*Commissioner of Social Security*,<br><br>Defendant. | ORDER |

This matter is before the court on the parties' briefs filed pursuant to the Supplemental Rules for Social Security Actions. [DE-17, -19, -20]. Lisa Lynn Fletcher ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of her applications for a period of disability and Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Having carefully reviewed the administrative record and the briefs submitted by the parties, the final decision of the Commissioner is affirmed.

## I. STATEMENT OF THE CASE

Claimant protectively filed applications for a period of disability and DIB and for SSI payments on April 15, 2022, alleging disability beginning December 31, 2020. (R. 24, 286–303). The claims were denied initially and upon reconsideration. (R. 107–170). A hearing before Administrative Law Judge ("ALJ") Koclanes was held on January 10, 2024, at which Claimant, represented by counsel, and a vocational expert ("VE") appeared and testified. (R. 50–78). On February 14, 2024, the ALJ issued a decision denying Claimant's request for benefits, (R. 21–49), and the Appeals Council denied Claimant's request for review, (R. 8–13). Claimant then filed a

complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520 and 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)–(c) and 416.920a(b)–(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* §§ 404.1520a(e)(3), 416.920a(e)(3).

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant had not engaged in substantial gainful activity from the alleged onset date of December 31, 2020. (R. 27). Next, the ALJ determined Claimant had severe impairments of atrial fibrillation, hypertension, fibromyalgia, bilateral trochanteric bursitis, gluteus Medius tendinosis, bilateral epicondylitis, migraines, major depression, generalized anxiety disorder with agoraphobia and panic attacks, posttraumatic stress

disorder ("PTSD"), and obsessive-compulsive disorder ("OCD"). *Id.* The ALJ also found that Claimant had medically determinable but non-severe impairments of thoracic back pain, plantar fasciitis, hypokalemia, mild aortic root enlargement, and vertigo. (R. 27–28). At step three, the ALJ concluded Claimant's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 28–31). Applying the technique prescribed by the regulations, the ALJ found that Claimant' s mental impairments have resulted in moderate limitations in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. (R. 30–31).

Prior to proceeding to step four, the ALJ assessed Claimant's residual functional capacity ("RFC"), finding Claimant had the ability to perform light work[1] with the following limitations:

> never climbing ladders, ropes, or scaffolds, frequent balancing, occasional climbing ramps and stairs, stooping, kneeling, crouching, and crawling, frequent handling and fingering with the bilateral upper extremities, avoidance of concentrated exposure to extreme heat, humidity, vibration, and pulmonary irritants such as fumes, odors, dusts, gases, and poor ventilation, and the avoidance of concentrated exposure to hazards, such as moving mechanical parts and unprotected heights. Further, she is limited to understanding, remembering, and carrying out simple instructions, using judgment to make simple work-related decisions, occasional interaction with supervisors, coworkers, and the public, and she can deal with occasional changes in a routine work setting.

(R. 31–40). In making this assessment, the ALJ found Claimant's statements about her limitations were not entirely consistent with the medical evidence and other evidence in the record. (R. 32). At step four, the ALJ concluded Claimant is unable to perform any past relevant work. (R. 41).

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. §§ 404.1567(b), 416.967(b).

However, at step five, upon considering Claimant's age, education, work experience, and RFC, the ALJ determined there are jobs that exist in significant numbers in the national economy that she can perform. (R. 41–42).

## V. DISCUSSION

Claimant asserts that the ALJ's denial is contrary to law, as he failed to consider the vocational impact of Claimant's need for a service animal. Pl.'s Br. [DE-17] at 4–9, Pl.'s Reply [DE-20]. The Commissioner contends the ALJ was not required to include an evaluation of Claimant's need for a service animal in the RFC determination. Def.'s Br. [DE-19] at 6–15.

The RFC is the capacity an individual possesses despite the limitations caused by physical or mental impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see also* S.S.R. 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The RFC is based on all relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); *see also* S.S.R. 96-8p, 1996 WL 374184, at *5. "[T]he residual functional capacity 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting S.S.R. 96-8p). The ALJ must provide "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* (quoting S.S.R. 96-8p); *see also Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (observing that the ALJ "must build an accurate and logical bridge from the evidence to his conclusion"). "Only after such a function-by-function analysis may an ALJ express RFC 'in terms of the exertional levels of work.'" *Monroe v. Colvin*, 826 F.3d 176, 179 (4th Cir. 2016) (quoting *Mascio*, 780 F.3d at 636).

However, the Fourth Circuit has rejected "a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis." *Mascio*, 780 F.3d at 636. Rather, the court explained that "[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* (citation omitted).

Claimant's possible need for a service animal is mentioned once in the RFC determination, when the ALJ recounts that Claimant testified she had a service dog. (R. 32). There is no discussion of whether the ALJ considered Claimant's service dog to be medically necessary or whether the need for a service dog affected the RFC determination. During the hearing Claimant testified she has a year-old therapy dog, still in training, that she tries to take everywhere with her. (R. 64–65). Claimant's attorney asked the VE if the need of a service dog would have an effect on the jobs or number of jobs he had testified were available to Claimant in response to the hypotheticals posed by the ALJ. (R. 76). The VE testified the use of a service dog would be classified as an accommodation by an employer and that he would not address past or alternative work that one can perform due to the need for that type of accommodation. (R. 77)

Claimant contends the ALJ's failure to address the vocational impact of her need for a service animal warrants remand because the lack of any narrative explanation on the issue frustrates meaningful review. Pl.'s Br. [DE-17] at 6–8 (citing *Patterson v. Comm'r of Soc. Sec.*, 846 F.3d 656, 662–63 (4th Cir. 2017)). The Commissioner asserts several challenges to Claimant's contention: (1) when assessing disability claims, the ALJ does not consider whether a claimant can perform work with a reasonable accommodation, Def.'s Br. [DE-19] at 6–9 (citing *Cleveland v. Pol'y Mgmt. Sys. Corp.*, 526 U.S. 795, 803 (1999) ("when the SSA determines whether an individual is disabled for SSDI purposes, it does *not* take the possibility of 'reasonable

accommodation' into account")); *see also* SSR 11-2p ("when we determine whether a person can do other work that exists in significant numbers in the national economy, we do not consider whether he or she could do so with accommodations"); (2) Claimant failed to meet her burden to show that a service animal was medically necessary, Def.'s Br. [DE-19] at 9–13 (citing *Benjamin C. v. Comm'r of Soc. Sec.*, No. 5:21-CV-872 (ATB), 2022 WL 16571699, at *11 (N.D.N.Y. Nov. 1, 2022); *Paxton v. Berryhill*, No. 2:18-CV-00493, 2019 WL 1376073, at *1 (S.D.W. Va. Mar. 27, 2019)); and (3) even if the court finds the ALJ should have addressed Claimant's possible need for a service animal, failure to do so was a harmless error, *id.* at 13–15 (citing *Shue v. O'Malley*, No. 23-1795, 2024 WL 2827936, at *3 (4th Cir. June 4, 2024)

Claimant refers to several cases from other districts where the ALJ similarly failed to consider the claimant's need for a service animal in the RFC determination, which often required remand. Pl.'s Br. [DE-17] at 6–8. For example, in *Bryan H. v. Kijakazi*, the claimant had a service animal prescribed by his treating physicians and the VE testified the use of a service animal would typically not be allowed in the jobs he listed. No. 19 C 2244, 2022 WL 2967423, at *3 (N.D. Ill. July 27, 2022). The court remanded the case because the ALJ failed to discuss whether the claimant needed a service animal or how she determined the claimant could work despite his reliance on a service animal. *Id.* However, in *Bryan H.*, the VE's testimony established the jobs he listed would be unavailable to the claimant due to his need for a service animal, because such an accommodation would "typically not be allowed," *id.*, where here, although asked about Claimant's service animal, the VE did not assert the jobs he listed would no longer be suitable. (R. 77).

In *Cruz v. Comm'r of Soc. Sec. Admin.*, having no existing authority on the subject, the court discussed the standards applied by other courts, noting "[s]ome courts have found that 'the

use of a service dog must be medically necessary to be considered in an RFC assessment.'" 406 F. Supp. 3d 1337, 1346 (M.D. Fla. 2019) (citing *McGehee v. Berryhill*, 386 F. Supp. 3d 80, 87 (D. Mass. July 2, 2019); *Payano v. Colvin*, No. 2:15-cv-00294-RFB-GWF, 2017 WL 4778593, at *4 (D. Nev. Oct. 23, 2017)). While "[o]ther courts have also found that the ALJ must consider the claimant's use of a service dog when the evidence shows that the service dog was medically prescribed or recommended." *Id.* (citing *Rentfro v. Colvin*, No. 14-cv-3015, 2015 WL 12868081, *13 (C.D. Ill. Oct. 21, 2015)). Ultimately, the court applied the medical necessity test and found the ALJ's failure to discuss the evidence in the record indicating the claimant's "use of a service dog is medically necessary and is part of his treatment plan," required remand for further proceedings. *Id.* at *1347. In a later case, *Higdon v. O'Malley*, the same court found a claimant had failed to meet the medical necessity test, and even if that were not the appropriate test, the decision of the ALJ would still be affirmed because the claimant had "not offered probative evidence of any functional limitations caused by any need for a service animal or how any service animal affects his ability to work or RFC assessment." No. 3:24-CV-214-WWB-SJH, 2024 WL 5484093, at *4 (M.D. Fla. Sept. 12, 2024) (citing *Cook v. Comm'r of Soc. Sec.*, No. 8:16-cv-819-T-JSS, 2017 WL 2544875, at *6, 11 (M.D. Fla. June 13, 2017) (holding affirmance warranted where Plaintiff failed to "demonstrate how the need for a service dog affects his RFC assessment"), *adopted sub nom. Higdon v. Comm'r of Soc. Sec. Admin.*, 2025 WL 778773 (M.D. Fla. Mar. 12, 2025)).

The Fourth Circuit, also without existing authority on the subject, addressed the medical necessity test in *Shue v. O'Malley*, noting it appeared "to be in tension with the requirement that the RFC be 'based on all the relevant medical *and other evidence* found in the record.'" 2024 WL 2827936, at *3. The Fourth Circuit did not resolve whether or not to adopt the medical necessity

test, noting they did not have to because "under any standard . . . the ALJ was not required to consider the service animal in this case." *Id.* at *4. In *Shue*, the claimant's medical records did not indicate she was ever prescribed a service dog, but rather she began bringing the service dog to her medical appointments and informed her providers she was in the process of training the dog to get her medications for her. *Id.* at *1. At the hearing the claimant mentioned her service dog once, testifying she had had her service dog for five years and that the dog was trained in migraine alert and medication retrieval. *Id.* at *1–3. The claimant did not "provide evidence or argue that the service dog would be a limitation rather than an accommodation in the workplace." *Id.* at *3. Furthermore, the VE in *Shue* testified the need for a service dog would be considered an accommodation. *Id.* at *2.

"An ALJ is explicitly required NOT to take into account the possibility of a reasonable accommodation." *Cox v. O'Malley*, No. 4:23-CV-01604-TER, 2024 WL 6963069, at *7 (D.S.C. May 21, 2024) (citing *Cleveland*, 526 U.S. at 795; SSR 11-2p, at *9). In *Cleveland*, the Supreme Court had to resolve whether there was a conflict arising between a plaintiff's SSDI claim and ADA claim. 526 U.S. at 803. The court held there was no conflict because "when the SSA determines whether an individual is disabled for SSDI purposes, it does not take the possibility of 'reasonable accommodation,' into account, nor need an applicant to refer to the possibility of reasonable accommodation when she applies for SSDI." *Id.*

> In response to *Cleveland's* holding, the SSA issued SSR 00-1c, which simply reiterates that a person who files for disability under the Social Security Act is not automatically precluded from pursuing an ADA claim. SSR 00-1c. The SSA later issued SSR 11-2p, which states, "When we determine whether a person can do other work that exists in significant numbers in the national economy, we do not consider whether he or she could do so with accommodations, even if an employer would be required to provide reasonable accommodations under the [ADA]." SSR 11-2p, 2011 WL 4055665, at *9 (Sept. 11, 2011).

*Arthur v. Saul*, No. 2:19-CV-186, 2020 WL 6381136, at *6 (E.D. Va. June 3, 2020), *adopted*, No. 2:19-CV-186, 2020 WL 5701885 (E.D. Va. Sept. 24, 2020); *see also Jones v. Apfel*, 174 F.3d 692, at 693 (5th Cir. 1999) ("[A] vocational expert should not base his determination of the availability of jobs on the assumption that the ADA requires an employer to accommodate an individual's disability.").

In *Shue*, the claimant argued although SSR 11-2p was valid, it did not apply in her case because the VE referred to the use of a service animal as a "special accommodation" rather than a "reasonable accommodation." *Id.* at *3. The Fourth Circuit found this argument unpersuasive. *Id.* Here, Claimant acknowledges SSR 11-2p but fails to address the relevant section. *See* Pl.'s Br. [DE-17] at 6 (when "considering whether something might be considered an 'accommodation' in the workplace, SSR 11-2p applies its 'extra help' rules"). Claimant and the Commissioner agree that the VE testimony confirms her use of a service dog would be considered an accommodation. *Id.* at 8; Def.'s Br. [DE-19] at 6–9. Claimant asserts due to her need for an accommodation, "the ALJ was obligated . . . to determine, as part of his burden of proof at step 5, whether the 'extra help' exemplified by the need for a service animal prevented [Claimant's] ability 'to do the tasks of a job independently, appropriately, effectively, and on a sustained basis.'" Pl.'s Br. [DE-17] at 8 (citing SSR 11-2p).

Here, Claimant's argument misses the mark. Although the VE confirmed that the use of a service dog in the workplace would be considered an accommodation, that does not mean the ALJ is required to analyze the medical necessity or investigate the vocational impact of said accommodation. SSR 11-2p provides when an ALJ determines a claimant can do other work that exists in significant numbers in the national economy, the ALJ "does not consider whether [the claimant] could do so with accommodations, even if an employer would be required to provide

reasonable accommodations under the [ADA]." 2011 WL 4055665 at *9. An ALJ is required to consider accommodations if the ALJ determines the claimant can do their past relevant work, and they previously performed that work with those same accommodations and are still able to do so now. *Id.* Here, the ALJ did not find Claimant was able to perform past relevant work. Accordingly, the ALJ was not required to consider Claimant's need for a service animal, which both parties agree would be considered an accommodation, when determining whether Claimant is disabled and the Commissioner's decision is affirmed.

## VI. CONCLUSION

For the reasons stated above, the final decision of the Commissioner is affirmed.

So ordered, this the 9 day of September 2026.

Robert B. Jones, Jr.
United States Magistrate Judge